# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF PENNSYLVANIA

CHRISTINE DORRIN, Executrix
for the ESTATE OF SCOTT
DORRIN, Deceased, et al.,

   Plaintiffs,

    v.

STATE FARM FIRE AND
CASUALTY COMPANY,

   Defendant.

CIVIL ACTION NO. 3:22-cv-01103

(SAPORITO, J.)

## MEMORANDUM

This is a property insurance coverage action. The plaintiffs own a vacation home in Drums, Pennsylvania, which was damaged by fire in October 2020. The defendant, State Farm Fire and Casualty Company, provided homeowner's insurance coverage for the property.

The plaintiffs assert breach of contract claims against State Farm based on the insurer's denial of first-party fire insurance coverage for certain losses, and statutory bad faith claims based on the allegedly unreasonable conduct of the insurer in handling the plaintiffs' coverage claim and in denying coverage for certain losses. The insurer-defendant has moved for partial summary judgment on the bad faith claims only.

Doc. 54. That motion is fully briefed and ripe for decision. *See* Doc. 55; Doc. 58; Doc. 59.

## I.    LEGAL STANDARD

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment should be granted only if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" only if it might affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute of material fact is "genuine" only if the evidence "is such that a reasonable jury could return a verdict for the non-moving party." *Anderson*, 477 U.S. at 248. In deciding a summary judgment motion, all inferences "should be drawn in the light most favorable to the non-moving party, and where the non-moving party's evidence contradicts the movant's, then the non-movant's must be taken as true." *Pastore v. Bell Tel. Co. of Pa.*, 24 F.3d 508, 512 (3d Cir. 1994).

The party seeking summary judgment "bears the initial responsibility of informing the district court of the basis for its motion," and demonstrating the absence of a genuine dispute of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the movant makes

such a showing, the non-movant must set forth specific facts, supported by the record, demonstrating that "the evidence presents a sufficient disagreement to require submission to the jury." *Anderson*, 477 U.S. at 251–52.

In evaluating a motion for summary judgment, the Court must first determine if the moving party has made a prima facie showing that it is entitled to summary judgment. *See* Fed. R. Civ. P. 56(a); *Celotex*, 477 U.S. at 331. Only once that prima facie showing has been made does the burden shift to the nonmoving party to demonstrate the existence of a genuine dispute of material fact. *See* Fed. R. Civ. P. 56(a); *Celotex*, 477 U.S. at 331.

Both parties may cite to "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for the purposes of the motion only), admissions, interrogatory answers or other materials." Fed. R. Civ. P. 56(c)(1)(A). "An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P.

56(c)(4). "Although evidence may be considered in a *form* which is inadmissible at trial, the *content* of the evidence must be capable of admission at trial." *Bender v. Norfolk S. Corp.*, 994 F. Supp. 2d 593, 599 (M.D. Pa. 2014); *see also Pamintuan v. Nanticoke Mem'l Hosp.*, 192 F.3d 378, 387 n.13 (3d Cir. 1999) (noting that it is not proper, on summary judgment, to consider evidence that is not admissible at trial).

## II. MATERIAL FACTS[1]

This lawsuit arises out of a homeowner's claim brought by the

---

[1] In compliance with Local Rule 56.1, the defendant's motion for partial summary judgment is "accompanied by a separate, short and concise statement of the material facts, in numbered paragraphs, as to which the moving party contends there is no genuine issue to be tried," Doc. 54-2. M.D. Pa. L.R. 56.1. Moreover, each factual statement presented by the defendants in support of their respective motions for summary judgment "include[s] references to the parts of the record that support the statements." *Id.*; *see also* Fed. R. Civ. P. 56(c)(1).

A party opposing summary judgment is likewise required by the local rules to file "a separate, short and concise statement of the material facts, responding to the numbered paragraphs" in the movant's statement of material facts, which must similarly "include references to the parts of the record that support the statements." M.D. Pa. L.R. 56.1.

Here, the non-moving plaintiffs have filed the requisite responsive statement of material facts, responding to the numbered paragraphs of the moving defendant's statement of material facts. Doc. 58, at 2–8. But in addition to their responsive statement of material facts, the plaintiffs have also filed a separate "counter-statement of material facts" that does not respond to the defendant's statement of material facts. Doc. 58, at 9–11. The local rules do not permit a non-moving party to file an *additional*

*(continued on next page)*

plaintiffs against their homeowner's insurance company, State Farm. The case was originally filed in the Court of Common Pleas of Philadelphia, and it was timely removed to the United States District Court for the Eastern District of Pennsylvania. On April 7, 2022, the case was transferred to the United States District Court for the Middle District of Pennsylvania.

On March 17, 2022, the plaintiffs filed a two-count amended complaint. Count I of the amended complaint asserts a breach of contract claim based on the insurer's denial of first-party fire insurance coverage for certain losses, and Count II of the amended complaint asserts a statutory bad faith claim under 42 Pa. Cons. Stat. Ann. § 8371 based on

---

statement of material facts that does not respond to the movant's statement. *See Farmer v. Decker*, 353 F. Supp. 3d 342, 347 n.1 (M.D. Pa. 2018) (disregarding non-movant's additional statement of facts for non-compliance with Local Rule 56.1); *Barber v. Subway*, 131 F. Supp. 3d 321, 322 n.1 (M.D. Pa. 2015) (declining to consider separate counter-statement of facts that was non-responsive to the movant's statement because it was "neither contemplated nor permitted by the Local Rules"); *see also Rau v. Allstate Fire & Cas. Ins. Co.*, 793 Fed. App'x 84, 87 (3d Cir. 2019) (upholding district court decision to strike non-movant's non-responsive counter-statement of facts under Local Rule 56.1); *Weitzner v. Sanofi Pasteur Inc.*, 909 F.3d 604, 613–14 (3d Cir. 2018) (upholding district court decision to strike non-responsive paragraphs from non-movant's answer to movant's statement of material facts under Local Rule 56.1). Thus, we have simply disregarded the plaintiff's non-responsive additional "counter-statement of material facts."

the allegedly unreasonable conduct of the insurer in handling the plaintiffs' coverage claim and in denying coverage for certain losses.[2] The plaintiffs allege in their amended complaint that, on or about October 16, 2020, they suffered direct physical loss and damage to a jointly owned residential property due to fire, which was insured under a State Farm policy at the time.[3]

---

[2] In response to the moving defendant's statement, the non-moving plaintiffs have responded "denied as stated" followed by the comment that the amended complaint is a written document that speaks for itself and must be read in its entirety. Generally, factual statements to which a non-moving plaintiffs have responded "denied as stated," factual statements for which the non-moving plaintiffs have provided a qualified denial without actually controverting the moving defendant's corresponding factual assertion, and factual statements for which the non-moving plaintiffs' response is not properly supported by citations to competent evidence in the record are properly deemed undisputed. *See Chase v. Frontier Commc'ns Corp.*, 361 F. Supp. 3d 423, 431 n.1 (M.D. Pa. 2019); *see also Mercurio v. Louisville Ladder, Inc.*, No. 3:16-CV-412, 2018 WL 2465181, at *1 n.1 (M.D. Pa. May 31, 2018) (deeming movant's factual statements admitted where non-moving party responded "denied as stated" with explanations that did not go to the truth of the matter, but rather offered legal analysis of the movant's assertions or directed the court to unrelated facts). **Moreover, "[r]esponses of this nature undermine the very purpose of having concise statements of material fact, namely, to direct the Court to precise points in the record where the parties genuinely disagree about material facts."** *Mundrati v. Unum Life Ins. Co. of Am.*, 772 F. Supp. 3d 567, 570 n.1 (W.D. Pa. 2025), *appeal filed*, No. 25-1794 (3d Cir. Apr. 24, 2025). Thus, the moving defendant's factual statement, supported by citation to the operative complaint, with which it is entirely consistent, is deemed admitted.

[3] *See supra* note 2.

The insured property at issue (the "Property") is located in Drums, Pennsylvania, and it is jointly owned among the five plaintiffs, with each holding an equal ownership share.[4] The Property is not the primary residence of any of the plaintiffs.[5] Christine Dorrin resides principally in Swarthmore, Pennsylvania; Lisa Dorrin resides in New Jersey; Mark Dorrin resides in Prospect Farm, Pennsylvania; Dennis Dorrin resides in Folsom, Pennsylvania; and Robert Dorrin resides in Broomall, Pennsylvania.[6]

The plaintiffs retained a public adjuster, Blaine Jelus, to represent them concerning the fire loss. The plaintiffs' communication with State

---

[4] In support of this statement, the moving defendant has cited specific deposition testimony by one of the plaintiffs, Christine Dorrin. In response, the non-moving plaintiffs have denied the statement without citation to any evidence in the record, except to comment that the deposition transcript is a written document that speaks for itself and must be read in its entirety. *See supra* note 2. Thus, the moving defendant's factual statement, supported by citation to specific deposition testimony, with which it is entirely consistent, is deemed admitted.

[5] In support of this statement, the moving defendant has cited specific deposition testimony by Christine Dorrin. Although the non-moving plaintiffs purport to admit this statement in part and deny it in part, they expressly admit that the Property is not the primary residence of any of the plaintiffs, which is the entire substance of the moving defendant's statement. It is entirely unclear what the non-moving plaintiffs intend to deny. Thus, the statement is deemed admitted.

[6] *See supra* note 4.

Farm concerning the loss was generally between the public adjuster and State Farm—Christine Dorrin did not recall speaking directly with anyone from State Farm about the loss.[7]

The State Farm policy provided three types of coverage: Coverage A provided coverage for the dwelling itself, with a $174,800 limit of liability; Coverage B provided coverage for personal property, with a $131,100 limit of liability; and Coverage C provided loss-of-use coverage, with a $52,440 limit of liability.[8] The policy also provides a mechanism to

---

[7] In support of this statement, the moving defendant has cited specific deposition testimony by one of the plaintiffs, Christine Dorrin. In response to the moving defendant's statement, the non-moving plaintiffs have responded "denied as stated" followed by the comment that the Christine Dorrin deposition transcript is a written document that speaks for itself and must be read in its entirety. *See supra* note 2. Thus, the moving defendant's factual statement, supported by citation to specific deposition testimony, with which it is entirely consistent, is deemed admitted. In addition, we note that, at her deposition, Christine Dorrin explained that, although owned by all five plaintiffs, she and Lisa Dorrin were the only ones who regularly used the Property.

[8] In support of this statement, the moving defendant has cited specific deposition testimony by Jim McDonnell, the State Farm claim specialist who handled the plaintiffs' coverage claim, and the State Farm policy itself. The non-moving plaintiffs have admitted the coverage limit amounts recited by the moving defendant, but they have otherwise denied the statement without citation to any evidence in the record, except to comment that the State Farm policy is a written document that speaks for itself and must be read in its entirety. *See supra* note 2. Thus, the moving defendant's factual statement, supported by citation to the

*(continued on next page)*

increase the dwelling coverage policy limits to account for building code upgrades or ordinance or law compliance. As State Farm claim specialist Jim McDonnell explained during his deposition, the policy is based on repairing the structure in a like kind and quality manner; over the course of time since the house was built, it is possible the building codes changed or are now enforced differently than at the time the structure was built; the estimate would be based on the actual damage to the structure, but if additional items were needed to be upgraded because of the building code, there is a certain dollar limit of coverage available for those upgrades.[9] In addition, if the Coverage A policy limits of $174,800 are exhausted, the policy provides an additional five percent of that coverage

---

State Farm policy and to specific deposition testimony, with which it is entirely consistent, is deemed admitted.

    [9] In support of this statement, the moving defendant has cited specific deposition testimony by Jim McDonnell. The non-moving plaintiffs have admitted that there is additional money allotted by the policy in the vent there are necessary code upgrades and the Coverage A limit has been exhausted, but they have otherwise denied the statement without citation to any evidence in the record, except to comment that the State Farm policy and the McDonnell deposition transcript are written documents that speak for themselves and must be read in their entirety. *See supra* note 2. Thus, the moving defendant's factual statement, supported by citation to specific deposition testimony, with which it is entirely consistent, is deemed admitted.

amount for removal of debris.[10] McDonnell also explained that the loss-of-use coverage under Coverage C applies for temporary housing where someone is displaced from their home; it could be a couple of days in a home or a long-term placement during reconstruction.[11] The time frame for the loss-of-use coverage payments depends on the facts of each particular case—specifically, how long it should take to get the house or building habitable again; if there are delays on the part of the

---

[10] In support of this statement, the moving defendant has cited specific deposition testimony by Jim McDonnell. The non-moving plaintiffs have admitted that the policy provides an additional five percent of the total dwelling coverage amount for removal of debris, but they have otherwise denied the statement without citation to any evidence in the record, except to comment that the State Farm policy is a written document that speaks for itself and must be read in its entirety. *See supra* note 2. Thus, the moving defendant's factual statement, supported by citation to specific deposition testimony, with which it is entirely consistent, is deemed admitted.

[11] In support of this statement, the moving defendant has cited specific deposition testimony by Jim McDonnell. The non-moving plaintiffs have admitted that Coverage C applies for temporary housing during a reasonable period of time necessary to make repairs to the covered property, but they have otherwise denied the statement without citation to any evidence in the record, except to comment that the McDonnell deposition transcript is a written document that speaks for itself and must be read in its entirety. *See supra* note 2. Thus, the moving defendant's factual statement, supported by citation to specific deposition testimony, with which it is entirely consistent, is deemed admitted.

policyholder, that would not activate the coverage or extend it.[12] In determining the appropriate period for restoration, State Farm considers the totality of the claim, including the damage sustained, the availability of materials, the availability of workers, and the location of the property; they will also consult with the contractor to see how long he or she estimates the restoration will take.[13]

State Farm received notice of the plaintiff's claim for coverage on or about October 19, 2020.[14] State Farm claim specialist Jim McDonnell

---

[12] In support of this statement, the moving defendant has cited specific deposition testimony by Jim McDonnell. The non-moving plaintiffs have admitted that the time frame for loss-of-use coverage payments is contingent upon how long it takes to make the necessary repairs in a given case, but they have otherwise denied this statement without citation to any evidence in the record, except to comment that the McDonnell deposition transcript is a written document that speaks for itself and must be read in its entirety. *See supra* note 2. Thus, the moving defendant's factual statement, supported by citation to specific deposition testimony, with which it is entirely consistent, is deemed admitted.

[13] In support of this statement, the moving defendant has cited specific deposition testimony by Jim McDonnell. In response, the non-moving plaintiffs have denied the statement without citation to any evidence in the record, except to comment that the deposition transcript is a written document that speaks for itself and must be read in its entirety. *See supra* note 2. Thus, the moving defendant's factual statement, supported by citation to specific deposition testimony, with which it is entirely consistent, is deemed admitted.

[14] In support of this statement, the moving defendant has cited

*(continued on next page)*

was assigned to the claim.[15] As the claim specialist, McDonnell was responsible for issuing payments on the file, he was the first point of contact, he was responsible for generating the estimate that was used for settlement, and he reviewed personal property losses.[16]

Due to limitations in McDonnell's physical ability to inspect buildings during COVID, State Farm retained an outside contractor, Alvin H. Butz, Inc., to obtain an estimate, which also helped in getting an estimate produced in a timely manner to facilitate prompt resolution of the claim.[17] McDonnell also explained in his deposition that Alvin H. Butz, Inc., was bidding the job as if they were going to possibly get the assignment.[18]

Alvin H. Butz, Inc., communicated with the plaintiffs' public adjuster and conducted an inspection of the Property on November 4,

---

excerpts from a State Farm claim activity log. Although the non-moving plaintiffs purport to admit this statement in part and deny it in part, they expressly admit that they notified State Farm of the loss on or about October 19, 2020, which is the entire substance of the moving defendant's statement. It is entirely unclear what the non-moving plaintiffs intend to deny. Thus, the statement is deemed admitted.

[15] *See supra* note 13.
[16] *See supra* note 13.
[17] *See supra* note 13.
[18] *See supra* note 13.

2020.[19] On November 23, 2020, McDonnell called the plaintiffs' public adjuster and requested the ages of building items so that State Farm could compute the actual cash value ("ACV") settlement; the public adjuster indicated that the information would be provided.[20]

On November 25, 2020, McDonnell indicated in the activity log that he had received the Alvin H. Butz, Inc., estimate and converted it into a State Farm estimate; McDonnell also noted in the activity log that he was awaiting the building item ages from the plaintiffs' public adjuster

---

[19] In support of this statement, the moving defendant has cited excerpts from a State Farm claim activity log. Although the non-moving plaintiffs purport to admit this statement in part and deny it in part, they expressly admit that Alvin H. Butz, Inc. communicated with the plaintiffs' public adjuster and conducted an inspection of the Property on November 4, 2020, which is the entire substance of the moving defendant's statement. It is entirely unclear what the non-moving plaintiffs intend to deny. Thus, the statement is deemed admitted.

[20] In support of this statement, the moving defendant has cited excerpts from a State Farm claim activity log. Although the non-moving plaintiffs purport to admit this statement in part and deny it in part, they expressly admit only that Alvin H. Butz, Inc. communicated with the plaintiffs' public adjuster and conducted an inspection of the Property on November 4, 2020, but this admission is entirely unrelated to the moving defendant's fact statement. Otherwise, the non-moving plaintiffs have denied the statement without citation to any evidence in the record, except to comment that the claim activity log is a written document that speaks for itself and must be read in its entirety. *See supra* note 2. Thus, the moving defendant's factual statement, supported by citation to specific documentary evidence, with which it is entirely consistent, is deemed admitted.

so the ACV amount could be computed.[21]

On December 2, 2020, after receiving the plaintiffs' personal property inventory, State Farm issued payment to the plaintiffs in the amount of $32,597.80 for Coverage B, personal property.[22]

On December 30, 2020, McDonnell again called the public adjuster's office and requested the ages of Coverage A (dwelling) items so the ACV could be computed and paid to the insureds.[23]

On January 4, 2020, McDonnell spoke with the public adjuster, Jelus, and again explained the need for ages of building items so that State Farm could prepare the estimate/ACV value; Jelus indicated that he would supply the requested information.[24]

On January 21, 2021, after receiving the information from Jelus,

---

[21] In support of this statement, the moving defendant has cited excerpts from a State Farm claim activity log. In response, the non-moving plaintiffs have denied the statement without citation to any evidence in the record, except to comment that the claim activity log and the McDonnell deposition transcripts are written documents that speak for itself and must be read in their entirety. *See supra* note 2. Thus, the moving defendant's factual statement, supported by citation to specific documentary evidence, with which it is entirely consistent, is deemed admitted.

[22] *See supra* note 21.

[23] *See supra* note 21.

[24] *See supra* note 21.

State Farm issued payment to the plaintiffs and their public adjuster in the amount of $135,608.34; a copy of the State Farm estimate was also provided.[25]

On March 2, 2021, Jelus called McDonnell and advised that he had gotten verbal estimates on the building repair, and he would be getting written estimates; Jelus also indicated that he would be meeting with contractors and getting back to McDonnell in a week or so.[26]

On March 30, 2021, McDonnell wrote to the plaintiffs' public adjuster and enclosed payment in the amount of $3,655.27 for the insured's Memorial Day weekend rental of a vacation home in the Poconos; McDonnell also advised that the "availability of Additional Living Expense coverage [under Coverage C] will conclude with a

---

[25] In support of this statement, the moving defendant has cited transmittal correspondence from State Farm to the plaintiffs that documented the payment of funds and a State Farm estimate. The non-moving plaintiffs have admitted that State Farm issued a payment of $135,608.34 to the plaintiffs on or about January 21, 2021, but they have otherwise denied this statement without citation to any evidence in the record, except to comment that the State Farm estimate is a written document that speaks for itself and must be read in its entirety. *See supra* note 2. Thus, the moving defendant's factual statement, supported by citation to specific documentary evidence, with which it is entirely consistent, is deemed admitted.

[26] *See supra* note 21.

reasonable period of time for the building repairs to be completed, which would be by August 31, 2021" (the "period of restoration").[27] At his deposition, McDonnell explained how he determined this "period of restoration." He explained that the contractor retained by State Farm, Alvin H. Butz, Inc., had prepared an estimate that included four months of rental of a temporary toilet, indicating how long the contractor anticipated being on site. State Farm then took that as an indicator of the actual construction time and added two months to permit the contractor to mobilize and get ready for the project. Based on this anticipated six-month period of restoration, McDonnell determined that State Farm would provide loss-of-use benefits ("ALE") through August 1, 2021. This period of restoration was intended to allow the insureds sufficient time to finalize a contract with their general contractor, obtain

---

[27] In support of this statement, the moving defendant has cited transmittal correspondence from McDonnell to the plaintiffs' public adjuster that documented the payment of funds and included the quoted language. In response, the non-moving plaintiffs have denied the statement without citation to any evidence in the record, except to comment that the correspondence is a written document that speaks for itself and must be read in its entirety. *See supra* note 2. Thus, the moving defendant's factual statement, supported by citation to specific documentary evidence, with which it is entirely consistent, is deemed admitted.

permits or any zoning reviews that might be necessary (none were anticipated as this was not new construction), and provide the contractor an opportunity to pre-order items so they were on-site when needed.[28]

On or about September 16, 2021, the plaintiffs' public adjustor forwarded to State Farm a copy of the plaintiffs' signed contractor agreement with Luchi Homes, Inc., which was signed by Christine Dorrin and Lisa Dorrin on September 8, 2021—approximately eleven months after the date of the fire loss.[29]

On or about September 30, 2021, the plaintiffs' public adjuster forwarded an executed residential lease, which had been signed that same day by Christine Dorrin and Lisa Dorrin. The lease concerned the rental of a vacation home in Lake Harmony, Pennsylvania, for a term commencing November 1, 2021, and ending April 2, 2022, at a total cost

---

[28] *See supra* note 13.

[29] In support of this statement, the moving defendant has cited a copy of the construction contract entered into between the plaintiffs and Luchi Homes. Although the non-moving plaintiffs purport to admit this statement in part and deny it in part, they expressly admit that the plaintiffs signed the Luchi Homes contract on September 8, 2021, and it was forwarded to State Farm by the plaintiffs' public adjuster on September 16, 2021, which is the entire substance of the moving defendant's statement. It is entirely unclear what the non-moving plaintiffs intend to deny. Thus, the statement is deemed admitted.

of $44,000.[30] The lease was signed approximately one year after the fire loss occurred.

On October 8, 2021, State Farm claim specialist McDonnell spoke with the plaintiffs' public adjuster, Jelus, concerning the claim. During the conversation, McDonnell indicated that, due to the insureds signing a contract, it would be reasonable to forward payment for the replacement costs benefits under Coverage A (dwelling).[31] In addition, McDonnell and Jelus discussed the plaintiffs' claim for loss-of-use benefits for a July 4 weekend vacation home rental by Christine Dorrin in Wildwood, New Jersey, as well as the planned six-month Lake Harmony vacation home rental. As for the Wildwood rental, McDonnell indicated that documentation provided reflected only that a deposit was made, and State Farm needed documentation that the cost was actually incurred. With regard to the Lake Harmony six-month rental, McDonnell

---

[30] In support of this statement, the moving defendant has cited a copy of the vacation home rental agreement entered into between the plaintiffs and landlord Michael McIntyre. Although the non-moving plaintiffs purport to admit this statement in part and deny it in part, they expressly admit that the terms of the lease identified by State Farm are accurately represented, which is the entire substance of the moving defendant's statement. It is entirely unclear what the non-moving plaintiffs intend to deny. Thus, the statement is deemed admitted.

[31] *See supra* note 21.

explained to Jelus that the repairs could have already been completed with no other alternative living expenses incurred. In response, Jelus stated that repairs could not have been completed yet due to COVID supply-chain issues. Also, one of the insureds had passed away during the process.[32]

On October 18, 2021, McDonnell and Jelus again discussed the claim. Among other things, McDonnell confirmed replacement cost benefits of $63,666.24 would be paid under Coverage A (dwelling). In addition, State Farm would make an additional payment of $10,796.46 to resolve the Coverage B (personal property) claim. As for the Coverage C (loss of use or alternative living expense) claims, McDonnell stated that State Farm had still not received documentation that the Wildwood stay

---

[32] In support of this statement, the moving defendant has cited excerpts from a State Farm claim activity log. The non-moving plaintiffs purport to admit this statement in part and deny it in part, expressly admitting that Jelus informed State Farm that repairs could not have been made both because of the death of Christine Dorrin's husband and because of the COVID-19 pandemic. Otherwise, the non-moving plaintiffs have denied the statement without citation to any evidence in the record, except to comment that the claim activity log is a written document that speaks for itself and must be read in its entirety. *See supra* note 2. Thus, the moving defendant's factual statement, supported by citation to specific documentary evidence, with which it is entirely consistent, is deemed admitted.

expense was actually incurred; if documentation were to be provided, State Farm would reimburse the cost. McDonnell also stated that State Farm would not be paying the $44,000 Lake Harmony vacation home lease set to commence on November 1, 2021, because repairs to the risk insured could have been completed prior to that date.[33] That same day, State Farm issued payment to the plaintiffs in the amount of $63,666.24 for Coverage A (dwelling) and $10,796.46 for Coverage B (personal property).

State Farm was never supplied with documentation that the Wildwood stay expense was actually incurred.[34]

---

[33] *See supra* note 21.

[34] The moving defendant does not cite any specific evidence to support this factual statement, but "the burden on the moving party may be discharged by 'showing'—that is, pointing out to the district court— that there is an absence of evidence to support the nonmoving party's case." *Celotex*, 477 U.S. at 325. In response, the non-moving plaintiffs have simply responded "denied," without citing any materials in support. But a non-moving party "must set forth specific facts showing that there is a genuine issue for trial. Bare assertions, conclusory allegations, or suspicions will not suffice." *Jutrowski v. Twp. of Riverdale*, 904 F.3d 280, 288–89 (3d Cir. 2018); *see also Dawson v. N.Y. Life Ins. Co.*, 932 F. Supp. 1509, 1513 n.2 (N.D. Ill. 1996) ("[W]here a factual assertion is met with such a naked denial the fact may be deemed admitted."). Thus, the moving defendant's factual statement regarding the absence of any evidence of a coverage obligation with respect to the Wildwood vacation rental is deemed admitted.

The plaintiffs were able to cancel the lease for the Lake Harmony home and avoid any payment obligation.[35]

At her deposition, Christine Dorrin was questioned regarding the Luchi Homes contract and repairs. Among other things, she confirmed that she signed the Luchi Homes contract on September 8, 2021—about eleven months after the fire.[36] She testified that she does not know when she paid the initial 10% deposit to Luchi Homes or when the contractor started work on the Property, and she did not ask the contractor how long the repairs would take.[37] Christine Dorrin also testified that she does not recall the contractor telling them if he ran into any problems during the course of making repairs, and that she inspected the Property as it was being repaired and did not recall any time when repairs were stopped for a period.[38] Furthermore, she does not recall anyone at Luchi Homes stating that they had encountered problems getting supplies.[39]

The plaintiffs' public adjuster, Jelus, likewise could not provide any meaningful testimony about the alleged delay in construction by Luchi

---

[35] *See supra* note 4.

[36] *See supra* note 4.

[37] *See supra* note 4.

[38] *See supra* note 4.

[39] *See supra* note 4.

Homes. In particular, when asked about any supply issues, Jelus testified only that here may have been an issue with windows concerning the work being performed by Luchi Homes, but he could not remember.[40] Jelus also stated that he was unsure if anyone from Luchi Homes had ever stated that they were having issues with getting supplies or other issues concerning the work, and he did not document any conversations he may have had with Luchi Homes.[41]

Plaintiffs' counsel also questioned the State Farm claim specialist, McDonnell, at length concerning the denial of payment for the six-month Lake Harmony vacation rental. In response, McDonnell explained that, while he was informed that there was a death in the family, the public adjuster did not indicate why that would extend the period of time necessary for the repairs to be made to the building.[42] Furthermore,

---

[40] In support of this statement, the moving defendant has cited specific deposition testimony by the plaintiffs' public adjuster, Blaine Jelus. In response, the non-moving plaintiffs have denied the statement without citation to any evidence in the record, except to comment that the deposition transcript is a written document that speaks for itself and must be read in its entirety. *See supra* note 4. Thus, the moving defendant's factual statement, supported by citation to specific deposition testimony, with which it is entirely consistent, is deemed admitted.

[41] *See supra* note 40.

[42] *See supra* note 13.

McDonnell addressed the alleged supply issues raised by the public adjuster, explaining that the availability of supplies was contemplated in the estimate prepared by Alvin H. Butz, Inc.—the contractor was doing business in the time of COVID and was aware of any supply chain issues.[43] Moreover, the plaintiffs' coverage claim was not the only one that McDonnell was handling during this time: In particular, State Farm was dealing with many repair issues with other houses and was aware that repairs were generally being made in a timely manner, even if at additional cost; those construction projects used the same construction materials used in the plaintiffs' project, as the "Dorrin home was fairly typical construction materials and they weren't necessarily in short supply.[44] McDonnell further explained that part of the way to overcome any supply chain issue was to pay more for the items, and that such increased material costs would have been reflected in the estimate of Alvin H. Butz, Inc.[45] McDonnell also noted that the plaintiffs' public adjuster did not state that Luchi Homes, specifically, had experienced delays or had an issue with the time frame for repairs; rather, the public

---

[43] *See supra* note 13.
[44] *See supra* note 13.
[45] *See supra* note 13.

adjuster spoke in generalities only.[46]

State Farm paid the policy limits on the plaintiffs' Coverage A (dwelling) claim.

During his deposition, the plaintiffs' public adjuster, Jelus, confirmed that the Coverage B (personal property) claim was paid or resolved by State Farm.[47]

The only coverage items that remain open are the supplemental dwelling coverage for building code upgrades or ordinance or law compliance and the additional living expense claims.[48]

At his deposition, Jelus agreed that the five-percent additional debris removal coverage is payable to the insured only if incurred as an actual expense; likewise, the building code upgrade / ordinance or law compliance coverage is payable only if incurred.[49] The Luchi Homes estimate does not contain a line-item breakdown for any tasks, including building code upgrades / ordinance or law compliance expenses or debris

---

[46] *See supra* note 13.
[47] *See supra* note 40.
[48] *See supra* note 40.
[49] *See supra* note 40.

removal.[50] On October 18, 2021, State Farm issued payment that included $9,065.08 for ordinance or law compliance, and $2,883.50 for debris removal.[51] In addition, the State Farm estimate included the sum of $19,887.92 for demolition, which includes debris removal; the State Farm estimate takes into account and provides for payment for debris removal, whether done by ProAction, Luchi Homes, or some other entity.[52]

In total, State Farm paid $199,274.58 for Coverage A (dwelling), $45,992.29 for Coverage B (personal property), and $3,655.27 for Coverage C (loss of use).[53]

## III.   DISCUSSION

In Count II of the amended complaint, the plaintiffs assert a

---

[50] In support of this statement, the moving defendant has cited the Luchi Homes construction contract and specific deposition testimony by the plaintiffs' public adjuster, Jelus. In response, the non-moving plaintiffs have denied the statement without citation to any evidence in the record, except to comment that the Luchi Homes construction contract and the Jelus deposition transcript are written documents that speaks for themselves and must be read in their entirety. *See supra* note 4. Thus, the moving defendant's factual statements, supported by citation to specific documentary evidence and deposition testimony, with which they are entirely consistent, are deemed admitted.

[51] *See supra* note 40.

[52] *See supra* note 40.

[53] *See supra* note 21.

statutory bad faith claim against the insurer-defendant, State Farm, under 42 Pa. Cons. Stat. Ann. § 8371, based on the allegedly unreasonable conduct of the insurer in handling the plaintiffs' coverage claim and in denying coverage for certain losses.

Section 8371 provides that:

> In an action arising under an insurance policy, if the court finds that the insurer has acted in bad faith toward the insured, the court may take the following actions:
>
> > (1) Award interest on the amount of the claim from the date the claim was made by the insured in an amount equal to the prime rate of interest plus 3%.
> >
> > (2) Award punitive damages against the insurer.
> >
> > (3) Assess court costs and attorney fees against the insurer.

42 Pa. Cons. Stat. Ann. § 8371. Under Pennsylvania law,

> the term bad faith includes any frivolous or unfounded refusal to pay proceeds of a policy. For purposes of an action against an insurer for failure to pay a claim, such conduct imports a dishonest purpose and means a breach of a known duty (i.e., good faith and fair dealing), through some motive of self-interest or ill will; mere negligence or bad judgment is not bad faith. Therefore, in order to recover under a bad faith claim, a plaintiff must show (1) that the defendant did not have a reasonable basis for denying benefits under the policy; and (2) that the defendant knew or recklessly disregarded its lack of reasonable basis in denying the

claim.

*Keefe v. Prudential Prop. & Cas. Ins. Co.*, 203 F.3d 218, 225 (3d Cir. 2000)

(citations and internal quotation marks omitted). "These two elements—

absence of a reasonable basis for denying a claim under the policy and

knowledge or reckless disregard of the lack of such reasonable basis—

must be proven by clear and convincing evidence." *Cozzone v. AXA*

*Equitable Life Ins. Soc. of the U.S.*, 858 F. Supp. 2d 452, 458 (M.D. Pa.

2012) (citing *Klinger v. State Farm Mut. Auto. Ins. Co.*, 115 F.3d 230, 233

(3d Cir. 1997)); *see also Bodnar v. Nationwide Mut. Ins. Co.*, 660 Fed.

App'x 165, 167 (3d Cir. 2016) ("Bad faith must be demonstrated by clear

and convincing evidence, even on summary judgment."); *Lomma v. Ohio*

*Nat'l Life Assurance Corp.*, 329 F. Supp. 3d 78, 96 (M.D. Pa. 2018)

(quoting *Bodnar*).

> Section 8371 encompasses a broad range of insurer
> conduct. For example, bad faith includes an
> unreasonable delay in handling claims, "a frivolous or
> unfounded refusal to pay, . . . [and] a failure to
> communicate with the insured." "Bad faith also occurs
> when an insurance company makes an inadequate
> investigation or fails to perform adequate legal
> research concerning a coverage issue."

*Smith*, 904 F. Supp. 2d at 524 (citations omitted, alterations in original).

Ultimately, "[a] reasonable basis is all that is required to defeat a claim

of bad faith." *J.C. Penney Life Ins. Co. v. Pilosi*, 393 F.3d 356, 367 (3d Cir. 2004).

The plaintiffs argue that State Farm unreasonably denied the plaintiffs' Coverage C (additional living expense) claims, refusing to accommodate delays caused by COVID-related supply chain issues and the death of one of the insureds.[54] But "[b]ad faith is a frivolous or unfounded refusal to pay, lack of investigation into the facts, or a failure to communicate with the insured." *Frog, Switch & Mfg. Co. v. Travelers Ins. Co.*, 193 F.3d 742, 751 n.9 (3d Cir. 1999). The record on summary judgment is replete with evidence that State Farm reasonably investigated the facts underlying the plaintiffs' claim for coverage, that it communicated regularly with the insured's public adjuster, and that its refusal to pay additional Coverage C (alternative living expense) benefits for a vacation home lease set to begin more than a year after the fire loss insured was reasonable under the circumstances presented. As the State Farm claim specialist handling the plaintiffs' claim testified at deposition, there was no evidence that supply chain issues caused any

---

[54] The plaintiffs' opposition brief does not argue any other basis for their bad faith claim.

actual delay in the reconstruction of the plaintiffs' fire-damaged Property. Indeed, the plaintiffs did not even execute a contract to repair and rebuild the property until eleven months after the fire loss occurred, well beyond the estimated period of reconstruction the claim specialist had extrapolated from the repair estimate prepare by contractor Alvin H. Butz, Inc. Moreover, as the State Farm claim specialist testified at his deposition, he handled many different claims at the same time, and repairs at other State Farm insured properties were being completed in a timely manner, albeit at increased cost, using the same construction materials used for restoration of the plaintiffs' Property. With respect to the death of one of the five insured co-owners of the Property, while some disruption might reasonably be expected, Scott Dorrin passed away in February 2021, and the contractor agreement with Luchi Homes was not executed until seven months later, in September 2021. Finally, the Lake Harmony vacation home lease covered an approximately six-month term *beginning* in November 2021, more than a year after the fire loss occurred in October 2020.

Viewing the evidence in the light most favorable to the non-moving plaintiffs, it is clear they have failed to adduce clear and convincing

evidence of bad faith. While the ultimate contractual coverage questions remain unresolved at this point in the litigation, based on the information available to State Farm as it investigated and processed the plaintiffs' claims for coverage, State Farm's decision to deny additional living expense benefits under Coverage C under these circumstances was not unreasonable. Stated another way, we find that, based on the evidence adduced by the parties on summary judgment, viewed in the light most favorable to the non-moving plaintiffs, no reasonable jury could find that State Farm's investigation or communications were inadequate, or that its denial of additional living expense coverage was frivolous or unfounded.

Accordingly, we will grant summary judgment in favor of the defendant, State Farm, with respect to the plaintiffs' statutory bad faith claim (Count II).

## IV.    CONCLUSION

For the foregoing reasons, the defendant's motion for partial summary judgment will be granted, and the clerk will be directed to enter judgment in favor of the defendant and against the plaintiff with respect to the plaintiff's statutory bad faith claim, set forth in Count II of the

amended complaint. The plaintiffs' remaining claim, a breach of contract claim set forth in Count I of the amended complaint, shall be set down for a jury trial.

An appropriate order follows.

Dated: September 29, 2025                    *s/Joseph F. Saporito, Jr.*
                                             JOSEPH F. SAPORITO, JR.
                                             United States District Judge